<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
             :   Hon. Joseph H. Rodriguez
CHRISTINE M. WARNETT, as the :
Administratix of the ESTATE OF :
KEVIN WARNETT, et al.,   :
    Plaintiff,   :   Civil Action No. 07-1291 (JHR)
          :
  v.        :
          :   <u>**MEMORANDUM ORDER**</u>
CORRECTIONAL MEDICAL  :
SERVICES, et al.,     :
    Defendants.  :
_____:

  Presently before the Court are the motions of Defendants New Jersey Department of Corrections and Correctional Medical Services to dismiss Plaintiff Christine Warnett's (administratix of the estate of Kevin Warnett) Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, the motions are granted in part and denied in part.

### I. Background

  The facts alleged in the complaint are as follows.  Kevin Warnett was an inmate incarcerated with the New Jersey Department of Corrections ("NJDOC") at South Woods State Prison ("SWSP") in Bridgeton, New Jersey.  Complaint ¶ ¶ 22-27.  Warnett entered into custody on September 27, 2002.  <u>Id</u>. at ¶ 28.  Prior to and during his incarceration, Warnett suffered from a condition called deep venous thrombosis ("DVT"), a medical

condition which required monitoring and treatment, id. at ¶ 30, in addition to gastro-intestinal disorders, including a peptic ulcer.  Id. at ¶ 31.  Warnett gave notice to the state medical providers of his past conditions, and warned them of the severe nature of his DVT, which could result in his death if not properly treated and monitored. Id. at ¶ 32.

While in the custody of the NJDOC, Warnett was under the care of Correctional Medical Services, Inc. ("CMS"), a medical services provider contracted by the NJDOC to provide medical care to inmates. See id. at ¶ 32.  During incarceration, his DVT therapy was altered without adequate explanation or testing. Id. at ¶ ¶ 34-37.  He informed Lisa Kuntz, a Registered Nurse and Nurse Practitioner employed at SWSP, of his condition and concerns with regard to his treatment.  Id. at ¶ ¶ 36-37.  Kuntz rejected these concerns.  Id.  Warnett developed a wound due to the altered treatment, id. at ¶ 38, and ultimately underwent surgery to treat the wound.  Id. at ¶ 40.  After surgery, he received daily dressing changes and was given pain medication.  Id. at ¶ 41.  The medication was prematurely terminated, causing Plaintiff pain.  Id. at ¶ ¶ 42-45.  Furthermore, Warnett was given additional medications that, in combination with the treatment alteration, contributed to the deterioration of his health. Id. at ¶ 33.  On March 17, 2005, Warnett suffered from acute distress, allegedly from pneumonia, and was taken to the South Jersey Regional Medical Center, where he died shortly thereafter.  Id. at ¶ 46.

The Administratix of Warnett's Estate, Christine Warnett ("Plaintiff"), brought an

action against the NJDOC and CMS[1] seeking declaratory and monetary relief.  Count III of the complaint alleges against all defendants a violation of Warnett's Fourteenth Amendment Equal Protection rights.  Id. at 14.  Count IV claims against CMS a violation Warnett's Eight Amendment rights under the theory of deliberate indifference. Id. at 15. Count V claims medical malpractice against CMS. Id. at 17.  Counts VI and VII claim against all defendants intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). Id. at 19, 20.  Count VIII alleges against all defendants a violation of Warnett's rights pursuant to the Americans with Disabilities Act ("ADA"). Id. at 21.  Count IX alleges against CMS a breach of contract. Id. at 23.  Count X alleges against all defendants a right to punitive damages. Id. at 24.  Count XI alleges against all defendants a loss of consortium. Id. at 25.

          The NJDOC and CMS have separate filed motions to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6).

## II. Discussion

### a. Standard on Motion to Dismiss

This motion was filed pursuant to Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss a complaint, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the

---

[1] Although the Complaint names individual defendants, the parties have stipulated to release the individual defendants from the lawsuit. See Stipulations of Dismissal, September 21, 25, 2007.  Thus, the only remaining defendants are the New Jersey Department of Corrections and Correctional Medical Services.

plaintiff.  Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991); Rogin v. Bensalem

Twp., 616 F.2d 680, 685 (3d Cir. 1980).  "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of a cause of action's elements will not do."  Bell

Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are

"enough to raise a right to relief above the speculative level on the assumption that all of

the complaint's allegations are true (even if doubtful in fact)."  Id. at 1965 (internal

citations omitted).

It is well settled that a pleading is sufficient if it contains "a short and plain

statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P.

8(a)(2).  Under the liberal federal pleading rules, a complaint need not spell out the theory

of liability under which the plaintiff hopes to recover. See Evans Prods. Co. v. West Am.

Ins. Co., 736 F.2d 920, 923 (3d Cir. 1984).  It is not necessary to plead evidence, and it is

not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf

Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of

Civil Procedure do not require a claimant to set forth an intricately detailed description of

the asserted basis for relief, they do require that the pleadings 'give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests.'"  Baldwin

4

County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quoting Conley, 355 U.S. at 47).

Finally, pursuant to Rule 12(b)(6), only the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice will be considered. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### b. Analysis

_____This Court will first address the NJDOC's sovereign immunity argument for the dismissal of the Plaintiff's complaint. Subsequently, the Court will address the other arguments for dismissal levied by the NJDOC and CMS.

_____The NJDOC contends that Plaintiff's complaint should be dismissed because it is barred by the Eleventh Amendment. NJDOC Br. at ¶ 4. The Eleventh Amendment bars all suits for monetary damages against a state in the absence of the state's consent. See, e.g., Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 98-101 (1984); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Hans v. Louisiana, 134 U.S. 1 (1890). It provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The state itself need not be named as a defendant in order for

Eleventh Amendment immunity to apply.  Rather, sovereign immunity extends to "agencies or departments" of the state.  Pennhurst, 465 U.S. at 100 ("It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

The Third Circuit employs a multi-faceted test to determine whether an entity is an arm of the state and therefore entitled to Eleventh Amendment immunity.  Specifically, the inquiry entails three factors: (1) whether payment of a judgment resulting from the suit would come from the state treasury; (2) the status of the entity under state law; and (3) the entity's degree of autonomy.  Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001) (citing Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (en banc)).  While no one factor is dispositive, the Third Circuit has identified as significant whether a judgment resulting from the suit would be paid from the state treasury.  Id. (citing Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999); Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140, 1145 (3d Cir. 1995); Fitchik, 873 F.2d at 659-60).

This District has consistently held that the NJDOC is an arm of the State of New Jersey for Eleventh Amendment purposes.  In Snyder v. Baumecker, 708 F. Supp. 1451, 1455-56 (D.N.J. 1989), this Court recognized that "the Corrections Department . . . is the alter ego of the State of New Jersey and, as such, is immune from suit under the eleventh amendment."  See also Casilla v. New Jersey State Prison, No. Civ. 05-4590, 2006 WL

6

2534416, at *7 (2006) ("[T]his Court has consistently extended sovereign immunity to NJDOC officials."); Romano v. Brown, No. Civ. 04-4346, 2006 WL 2376913 at *6 (2006) (same).

In this case, NJDOC is an arm of the State for Eleventh Amendment purposes. It is organized as an executive and administrative entity within the executive branch of New Jersey State government. See N.J. Stat. Ann. § 30:1B-1 (establishing the "Department of Corrections as a principal department in the Executive Branch."). Moreover, NJDOC's status under New Jersey law ensures that any judgment awarded against it would be paid by the State itself.

While the Eleventh Amendment confers a broad cloak of immunity upon the states, it is not without limits. There are two circumstances where a state or an arm thereof is not entitled to sovereign immunity. First, a state may waive its immunity and consent to suit. See, e.g., College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). The waiver of immunity, however, must be stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Edelman, 415 U.S. at 673 (alteration in the original) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). Second, Congress may abrogate state immunity for suits brought under federal law if it "authorize[s] such a suit in the exercise of its power to enforce the Fourteenth Amendment." College Sav. Bank, 527 U.S. at 670. Pursuant to the Eight and Fourteenth

Amendments claims brought through the 42 U.S.C. § 1983 statutory vehicle–the statutory

provision used to enforce constitutional rights–neither exception is applicable.[2]  First, there

is no indication that the NJDOC waived its immunity and consented to suit.  In fact, the

Department specifically contends, and Plaintiff does not dispute, that it has not consented.

See NJDOC Br. at 6.  Additionally, it is well settled that Congress did not abrogate the

state's sovereign immunity protection when in enacted 42 U.S.C. § 1983.  See Quern v.

Jordan, 440 U.S. 332, 342-45 (1979) (holding that Congress did not abrogate state

sovereign immunity when it enacted 42 U.S.C § 1983); see also Bennett, 288 F. Supp. 2d

at 683.

In opposition to the instant motion, Plaintiff relies on Estelle v. Gamble, 429 U.S.

97, 103-04 (1976), for the proposition that the Eight Amendment requires that prisons

provide adequate medical care to inmates.  See Plaintiff's Br. at 9.  This reliance is

misplaced, however, because the case does not address Eleventh Amendment abrogation

as to 42 U.S.C. § 1983.  Rather, Estelle considered whether a prison had a duty to provide

medical care to those incarcerated.  Id. at 103-04.  The Plaintiff cites to no authority that

demonstrates congressional authorization for suit against the states under § 1983, nor does

_____

[2]  In substance, Count I of the complaint is merely a recapitulation of factual allegations
that may be relevant to the alleged constitutional violations discussed infra.  Moreover, although
it is not plainly stated in the Complaint, this Court will assume that the Plaintiff is using the §
1983 enforcement vehicle to bring the Eight and Fourteenth Amendment Constitutional claims,
and not to claim a substantive right pursuant to Complaint's Count II.  Section 1 of the
Fourteenth Amendment extends the operation of the Eighth and Fourteenth Amendments to the
states.  Pursuant to their power granted by Section 5 of the Fourteenth Amendment, Congress
enacted 42 U.S.C. § 1983 as the statutory enforcement mechanism.

she explain why the holding of <u>Quern</u> should not control this situation.  For these reasons, the Eleventh Amendment bars Plaintiff's § 1983 suit against the NJDOC.

_____ Moreover, the Department asserts that its motion to dismiss should be granted because it is not a "person" within the meaning of 42 U.S.C. § 1983.  The Court agrees. To state a claim under section 1983,[3] a plaintiff must assert two essential points: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a *person* acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (emphasis added).  Accordingly, Plaintiff must demonstrate that the NJDOC is a "person" under section 1983.  This, however, is impossible in light of <u>Will v. Michigan Dept. of State Police</u>, in which the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  491 U.S. 58, 71 (1989).  Thus, notwithstanding the Eleventh Amendment issue, the claims against NJDOC are dismissed because it is not a "person" for section 1983 purposes.  Therefore, the Eighth and Fourteenth Amendment claims brought under §

---

[3]  The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

1983 pursuant to Counts I, II, III, and IV of the Plaintiff's complaint are dismissed. See Complaint at 10-15.  Given that the NJDOC is entitled to Eleventh amendment immunity, and consequently is not a "person" under the auspices of Section 1983, the Court does not have subject matter jurisdiction over these claims and dismisses them pursuant to FED. R. CIV. P 12(b)(1).  See Firestone Tire & Rubber v. Risjord, 449 U.S. 368, 379 (1981).

### Count VIII - NJDOC and CMS- Americans with Disabilities Act

Count VIII is a claim brought under the auspices of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131. et seq.  In this count, Plaintiff contends that Title II of the ADA prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of that disability. 42 U.S.C. § 12132.  The Supreme Court has noted that "[s]tate prisons fall squarely within Title II's statutory definition of 'public entity,' which includes 'any . . . instrumentality of a State . . . or local government.'" Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998) (citing § 12131(1)(B)).

The ADA proscribes the exclusion of otherwise qualified participants from any program or benefits on account of their disability.  42 U.S.C. § 12132.  In order to satisfy such a claim, Plaintiff must show that: (1) the plaintiff has a disability; (2) is otherwise qualified for the service sought or would be qualified if the defendant made reasonable modifications to the program, and; (3) the plaintiff was excluded from the program solely by reason of his or her disability. See Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir. 1995).

10

Under the ADA, disability is defined as "a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12132(2).  The Supreme Court instructs that "[t]he determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002).  Therefore, the determination "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." Id. at 692.

In United States v. Georgia, 546 U.S. 151 (2006), the Supreme Court held that "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  Id. at 159.  The Court left the question open as to whether there is valid abrogation when the Constitution is not violated. Id.  Since the Plaintiff has properly alleged the violation of Warnett's Fourteenth Amendment rights, we need not address the open question at this time.[4]

Relying on Georgia, the defendants note that "[not] all ADA claims survive Eleventh Amendment immunity challenges." NJDOC Br. at 3; CMS Br. at 9.  However,

---

[4] In Count III of the Complaint, Plaintiff avers that "[t]he Equal Protection Clause of the Fourteenth Amendment . . . states that no state shall deny to any person within its jurisdiction equal protection of the laws." Complaint ¶ 69. Plaintiff then alleges that "the (sic) was a member of a protected class" and that "all (sic) Plaintiff received treatment different from the treatment provided to other inmates." Complaint ¶¶ 70-71.  Therefore, the Plaintiff has satisfied the notice pleading requirement with regard to claiming a Fourteenth Amendment violation.

citing Iseley v. Beard, 200 Fed. Appx. 137 (3d Cir. 2006), the defendants state that "this case does not require this court to undertake such an analysis because prisoner claims of denial of adequate medical care are appropriately brought as Eight Amendment claims of medical deliberate indifference." NJDOC Br. at 3; CMS Br. at 9.  But the court in Iseley did not hold that the Eighth Amendment supplants Title II claims in denial of medical treatment circumstances.  Instead, it found that where a plaintiff *does not* allege that he was excluded from any program solely on the basis of his disability, but merely claims he was denied medical treatment, Section 12132(3) of the ADA is not satisfied; the plaintiff must allege that he was excluded from treatment solely by reason of his disability. Id. at 4.

Here Plaintiff alleges that Warnett suffered from DVT, "a medical condition that required continual medical monitoring and treatment and a recognizable disabilities (sic) under the [ADA]." Complaint ¶ 96.  While medical evidence is not required to show that some conditions are disabilities pursuant to the ADA; for a condition like DVT, evidence must establish that a major life activity has been substantially interfered with. See Peter v. Lincoln Technical Institute, Inc., 255 F.Supp.2d 417, 429 (E.D. Pa. 2002) (noting that medical evidence is not required to show that a missing arm is a disability).  DVT has been recognized as a "disability" pursuant to the ADA when proper medical foundation is established. Id; see also Lakota v. Sonoco Products Company, 2002 WL 596211, at *3 (D. Mass. Apr. 4, 2002).

Although the Complaint does not allege how Warnett had a major life activity

substantially limited, it is reasonable to infer at this point that the continual medical monitoring and treatment of DVT may create such limitations.  See Menkowitz v. Pottstown Memorial Medical Center, 154 F.3d 113, 117 n. 2 (3d Cir. 1998) (observing that if a "complaint states that [the plaintiff's] disability is 'a disorder recognized as a disability under the [Act] and the Rehabilitation Act . . . [the] allegation, which we must accept as true, [is] sufficient to meet the notice pleading requirements of FED. R. CIV. P. 8 with respect to his disability"); see also E.E.O.C. v. J.H. Routh Packing Co., 246 F.3d 850, 852 (6th Cir. 2001) (alleging a disability "implicitly includ[es] a substantially affected major life activity without requiring it to be pleaded expressly").

Defendants attempt to analogize this case to the circumstances in Iseley.  In that case, there was no allegation that the plaintiff was excluded from any program solely on the basis of his disability, but instead claimed that he was denied medical treatment; failing to satisfy Section 12132(3).  Id. at 4.  Since Plaintiff here did allege denial of treatment solely on the basis of disability, these cases are dissimilar.

Plaintiff's ADA claim closely resembles the allegations made in furtherance of his medical malpractice and Eighth Amendment claims.  However, Plaintiff thinly asserts a claim under the ADA.  For this reason, the Court is constrained to deny Defendants' motions to dismiss Count VIII .

### Count VI: IIED; Count VII: NIED; Count XI: Loss of Consortium

Plaintiff alleges several common law claims against the NJDOC, including

Intentional Infliction of Emotional Distress ("IIED"), Negligent Infliction of Emotional Distress ("NIED"), and Loss of Consortium.  Given that these counts seek damages, the NJDOC contends that they are barred by the Eleventh Amendment. See Def. Reply Br. at 3.  This is the only argument put forth by NJDOC with respect to these counts.

New Jersey's Tort Claims Act ("TCA") expressly waives its sovereign immunity as to certain claims.  See Gardner v. Fauver, Civ. No. 91-2606, 1991 WL 208879, at *3 (D.N.J. October 8, 1991) (citing N.J.Stat.Ann. 59:2-2 (West 1982)("A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.")).  In Paragraph 44 of the Complaint, Plaintiff avers that a "Notice of Tort Claim" was filed.

Before a plaintiff can allege certain claims against the State, compliance with the notice provision of  the Tort Claims Act is required. N.J.S.A. §§ 59:8-3, 59:8-8.  Failure to comply results in dismissal of the suit.  See Sinclair v. Dunagan, 905 F.Supp. 208, 212 (D.N.J.1995) (Failure to provide statutory notice is a ground for dismissal with prejudice).

Apart from the vague statement that a "notice of tort claim" was filed, Plaintiff has not demonstrated compliance with the notice provision of the Tort Claims Act, nor has it argued in its opposition to the motion whether these claims are permitted to proceed under the Act.

But "[c]ourts in this District have interpreted Section 59:2-10 of the New Jersey

Tort Claims Act to bar public entities from liability for claims of intentional torts, including claims for intentional infliction of emotional distress." Kee v. Camden County, No. 04-842, 2006 U.S. Dist. WL 2827733, at *6 (D.N.J. Sept. 28, 2006) (citing Soto v. City of Newark, 72 F.Supp.2d 489, 497 (D.N.J.1999)).

As a result, the claim of intentional infliction of emotional distress against NJDOC is dismissed.  As to the claims of negligent infliction of emotional distress and loss of consortium, these claims are dismissed without prejudice with the right to refile pending Plaintiff's demonstration of compliance with the notice provisions of the Tort Claims Act. The NJDOC's motion to dismiss is granted as to Counts VI, VII, and XI.

## Count IX: Breach of Contract

Count IX claims Breach of Contract against the NJDOC.  Advancing arguments similar to those made as to Counts VI, VII, and XI, the NJDOC contends that because this count seeks damages, it is barred by the Eleventh Amendment. See Def. Reply Br. at 3. The state of New Jersey has waived its sovereign immunity with respect to contract liability, with certain limitations. See N.J.S.A. 59:13-3:

> The State of New Jersey hereby waives its sovereign immunity from liability arising out of an express contract or a contract implied in fact and consents to have the same determined in accordance with the rules of law applicable to individuals and corporations; provided, however, that there shall be no recovery against the State for punitive or consequential damages arising out of contract nor shall there be any recovery against the State for claims based upon implied warranties or upon contracts implied in law.

15

Therefore, if Plaintiff has complied with the notice provisions of the Tort Claims Act, New Jersey has waived its sovereign immunity with respect to Count IX.  But, for the reasons discussed below, the Court finds that Plaintiff lacks standing to bring a breach of contract claim.

### Count IX - All Defendants - Breach of Contract

Plaintiff alleges that Warnett was a third-party beneficiary of the contract between CMS and the NJDOC. Complaint ¶ 23.  CMS adopts the NJDOC argument that Plaintiff does not have standing to sue for breach of contract between NJDOC and CMS.  CMS Br. at 9; NJDOC Br. at 19-23.  Therefore, CMS argues that Plaintiff's breach of contract claim should be dismissed.

N.J. Stat. Ann. § 2A:15-2 provides: "A person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court . . . although the consideration of the contract did not move from him."  Pursuant to New Jersey law, a third-party may only enforce a contract if it is an *intended* beneficiary, rather than an *incidental* beneficiary. See Rieder Communities, Inc. v. Twp. of N. Brunswick, 227 N.J.Super. 214 (N.J.Super.Ct.App.Div. 1988).  "To determine whether a third-party is an intended beneficiary, New Jersey courts look to whether the contracting parties have expressly intended for that third-party to 'receive a benefit which might be enforced in the courts.'" Washington v. Correctional Medical Services, Civ. No. 05-3715, 2006 WL 1210522 (D.N.J. 2006) (quoting Airmaster Sales Co. v. N. Bridge Park Co-op, Inc., 748 F.Supp.

16

1110, 1117-18 (D.N.J. 1990).

The NJDOC contends that the contract's intent was to "achieve an economic and efficient method by which to fulfill a constitutionally mandated government function." NJDOC Br. at 23. The NJDOC cites two unpublished District of New Jersey opinions holding that prisoners do not have standing to sue on the contract between CMS and the NJDOC. Allmond v. McDowell, Civ. No. 98-3733 (D.N.J. April 16, 2001); Mann v. Barbo, Civ. No. 00-2215 (D.N.J. July 24, 2001). Although these cases are not binding on this Court, the logic employed is sound and this Court sees no reason to depart from their findings. In addition, Plaintiff does not allege that the contract contains language that would make him an intended beneficiary with standing to sue. See generally Complaint ¶ 23. As a result, given the holdings hereby subscribed to, it is not plausible that Plaintiff will be able to substantiate an allegation of standing. See Twombley, supra. Defendants' motion to dismiss Count IX of the Complaint is granted.

### Count II - CMS - 42 U.S.C. 1983

Count II alleges a violation of Warnett's section 1983 rights against CMS. Section 1983 does not provide any substantive rights, but is instead a vehicle for the enforcement of rights (in this case constitutional rights). In Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 691-94 (1978), the Supreme Court stated that a municipality could not be held liable under Section 1983 pursuant to a theory of *respondeat superior*. This protection has been extended to private corporations performing municipal

17

functions.  See Taylor v. Plousis, 101 F.Supp.2d 255, 263 (2000)(citing Powell v. Shopco

Laurel Co., 678 F.2d 504, 506 (4th Cir.1982)(holding that reasoning of Supreme Court in

Monell was equally applicable to private corporations and that § 1983 "evinc[ed]" a

Congressional intent not to impose vicarious liability); Iskander v. Vill. of Forest Park,

690 F.2d 126, 128 (7th Cir.1982)(same); Miller v. City of Philadelphia, No. Civ. A.

96-3578, 1996 WL 683827, at * 8 (E.D.Pa. Nov. 25, 1996)(same).

CMS is a private company that provides medical services to prisoners at SWSP.  As

against a medical services company, the Third Circuit requires the plaintiff "provide

evidence that there was a relevant [company] policy or custom, and that the policy caused

the constitutional violation [he] allege[s]" in order to survive summary judgment on his

claim against the company.  See Natale v. Camden County Corr. Facility, 318 F.3d at

583-84 (3d Cir. 2003).  This legal standard is distinct from other deliberate indifference

theories made against doctors, prison wardens, or the prison itself.

Thus, liability can only attach to CMS through the demonstration of a policy or

custom that caused Plaintiff's injury.  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.

1990)  Assuming the acts of a CMS employee have violated a person's constitutional

rights, those acts may be deemed the result of a policy or custom of the entity for whom

the employee works, thereby rendering the entity liable under § 1983, where the

inadequacy of existing practice is so likely to result in the violation of constitutional rights

that the policymaker can reasonably be said to have been deliberately indifferent to the

need.  See Natale, 318 F.3d 584 (citations omitted).  Not all state action, however, rises to the level of a custom or policy.

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (*quoting* Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decision maker," but that is "so widespread as to have the force of law."  Bryan County v. Brown, 520 U.S. 397, 404 (1997).  Therefore, the critical issue is whether any of its existing policies or customs are so likely to result in the violation of constitutional rights that it can reasonably be said to have been deliberately indifferent.  These considerations need not be addressed on a motion to dismiss and are properly left for summary judgment.

Plaintiff's complaint avers that Defendants' actions constituted a "pattern and practice of treating Plaintiff with deliberate indifference".  Compl. at ¶63.  Plaintiff has complained of a "custom".  The Court will consider the relevant constitutional violations below with respect to CMS.

### Count III - CMS - Fourteenth Amendment: Equal Protection

CMS joins the NJDOC's arguments for dismissal of the alleged Equal Protection violation, and seeks dismissal of Plaintiff's complaint on the ground that there is insufficient factual allegations to support such a claim.  See CMS Br. at 9; NJDOC Br. at

15.  The Court disagrees.

To assert a successful equal protection claim under the Fourteenth Amendment, the Plaintiff "must prove the existence of purposeful discrimination." Batson v. Kentucky, 476 U.S. 79, 93 (1986). Here, Plaintiff must show that Warnett '"receiv[ed] different treatment from that received by other individuals similarly situated."' Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing Kuhar v. Greensburg-Salem School Dist., 616 F.2d 676, 677 n. 1 (3d Cir.1980).  Accord Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001); Jubilee v. Horn, 975 F.Supp. 761, 765 (E.D.Pa. 1995), aff'd 151 F.3d 1025 (3d Cir. 1998) (since prisoners are not members of a protected class, the Plaintiff must show that she was treated differently than similarly situated inmates for no legitimate or rational reason).

In Count III of the complaint, Plaintiff claims that Warnett received treatment different from the treatment provided to other inmates. Complaint ¶ 71.  Since it is plausible that Plaintiff will be able to show that Warnett received treatment different than that rendered to similarly situated inmates, CMS's motion to dismiss Count III is denied.[5]

### Count IV - CMS - Eighth Amendment: Deliberate Indifference

Count IV alleges a violation of Warnett's Eighth Amendment rights by CMS given their deliberate indifference to his serious medical needs.  To state a claim pursuant to 42

---

[5] It is unnecessary for the Plaintiff to allege that Warnett received treatment different from similarly situated inmates to satisfy notice pleading requirements.  Plaintiff's pleading that Warnett received treatment different from that provided to other inmates is sufficient. Complaint ¶ 71.

U.S.C. § 1983, Plaintiff must show that CMS acted under the color of state law to deprive Warnett of a right protected by the United States Constitution. Coletta v. Board of Freeholders, 2007 U.S. Dist. Lexis 2717 (3d Cir. 2007) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)).

_____The Eighth Amendment proscribes cruel and unusual punishment, and requires that prison officials provide adequate medical care to inmates.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  To bring a cognizable claim for violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Satisfaction of the first Estelle prong requires an inmate to demonstrate that his medical needs are serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'").  The Third Circuit defines serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257,

21

272-73 (3d Cir. 2003) (internal quotations and citations omitted); see also Monmouth

County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987),

*cert. denied*, 486 U.S. 1006 (1988).

_____The Complaint alleges a serious medical need "that has been diagnosed by a

physician as requiring treatment." See Complaint ¶ 30.  Therefore, part one of first prong

is satisfied and there is no need to address the remaining factors under this prong.  To

satisfy the second Estelle prong, Plaintiff must prove a set of facts to show that the

"behavior on the part of prison officials . . . constitute[d] deliberate indifference to [his

serious medical] need." See Estelle, 429 U.S. at 106. See also Farmer v. Brennan, 511 U.S.

825, 837-38 (1994) (deliberate indifference exceeds mere malpractice or negligence; it is

the reckless disregard to a known risk of harm); Natale, 318 F.3d at 582 (deliberate

indifference requires proof that the official knew of and disregarded an excessive risk to

inmate health or safety); Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J.

2000) (a prisoner's subjective dissatisfaction with his medical care does not constitute

deliberate indifference).

In this circuit, deliberate indifference is demonstrated where a prison official: "(1)

knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2)

delays necessary medical treatment based on a non-medical reason; or (3) prevents a

prisoner from receiving needed or recommended medical treatment." See Rouse v.

Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  See also Monmouth County Correctional

22

Institutional Inmates, 834 F.2d 326, 346 (3d Cir. 1987) ("deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment.'") (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).  In addition, "[n]eedless suffering resulting from a denial of simple medical care, which does not serve any penological purpose, is inconsistent with contemporary standards of decency and thus violates the Eighth Amendment." Atkinson, 316 F.3d at 266.

Plaintiff claims that Nurse Kuntz refused to provide the treatment that Warnett pleaded for, and that Warnett informed his caretakers that his DVT could result in death if not properly treated. Complaint ¶ 32, 36-37.  Plaintiff may be able to show that Kuntz knew of Warnett's need for a particular medical treatment but intentionally refused to provide it.  Since it is alleged that Warnett died as a result of the refused treatment, it is improper to deem the result a "subjective dissatisfaction"; hence, this case is unlike the scenario described in Andrews, 95 F.Supp.2d at 228.  Plaintiff may be able to prove that the CMS official knew of and disregarded an excessive risk to inmate health.[6] See Natale,

---

[6] In their brief supporting a motion to dismiss, CMS analogized the unpublished opinion of  Pilkey v. Lappin, 2006 WL 1843098, Civ. No. 05-5418 (D.N.J. 2006) to the facts of this case. However, the analogy is imprecise.  Pilkey notes, inter alia, that a prison officer's refusal to consider an inmate's self-diagnosis is not tantamount to cruel and unusual punishment. Id.  This Court agrees that the refusal to consider Warnett's self-diagnosis does not constitute such a violation.  Nonetheless, an official's knowing refusal to treat a medical need does constitute a violation of the Eight Amendment.

318 F.3d at 582.  This claim can proceed.

Furthermore, Plaintiff claims that after Warnett underwent surgery to treat a wound that resulted from the refused care, his pain medication was prematurely terminated, leaving Warnett in pain.  Complaint ¶ 38-45.  Here, Plaintiff may be able to satisfy the Atkinson standard by showing that needless suffering resulted from the denial of simple medical care; with such denial not serving any penological purposes. See Atkinson, 316 F.3d at 266.

Based on the allegations made by the Plaintiff, the Court finds that the Plaintiff may be able to support a claim of serious medical need and denial of medical care.  Plaintiff has alleged sufficient facts to satisfy the notice pleading standard pursuant to Rule 12(b)(6). Therefore, CMS's motion to dismiss Plaintiff's Eight Amendment claim is denied.

### Count VI - CMS - Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant acted (1) intentionally or recklessly, (2) that the conduct was outrageous, (3) that the actions proximately caused the plaintiff's emotional distress, and (4) that the distress suffered was "so severe that no reasonable person could be expected to endure it." Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 365-68 (1988).

Count VI of the Complaint satisfactorily sets forth a claim against CMS for intentional infliction of emotional distress, alleging that the defendants' "intentional, and/or reckless acts . . . caused Plaintiff severe emotional distress" and that as a "proximate result of the . . . acts . . . Plaintiff suffered injuries."  Complaint ¶ 88-90.  As a

result, CMS's motion to dismiss Plaintiff's intentional infliction of emotional distress claim is denied.

### Count X - All Defendants - Punitive Damages

Given the dismissal of the substantive counts against the NJDOC, this Count is likewise dismissed without prejudice with the right to refile consistent with this Order. Consequently, this claim is dismissed against NJDOC.  See Lasoff v. New Jersey, 414 F.Supp.2d 483, 489 (D.N.J. 2006)(dismissing punitive and compensatory damages claims against the State of New Jersey).

However, as to CMS, punitive damages are permitted under federal law where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); Keenan v. City of Philadelphia, 983 F.2d 459, 470 (3d Cir. 1992). In New Jersey, a successful claim for punitive damages requires that a plaintiff demonstrate "that the defendant's acts or omissions which caused the harm were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions."  New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, *et seq*.

Defendants argue that because "the record is devoid of any facts or evidence indicating that the defendants acted with an 'evil motive' or 'callous indifference,'" the punitive damages count must be dismissed. NJDOC Br. at 28; CMS Br. at 9.  The Court disagrees.  At the pleading stage, no evidence is required. See Bogosian v. Gulf Oil Corp.,

561 F.2d 434, 446 (3d Cir. 1977) (It is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim).  Since Plaintiff may be able to make the necessary showing for punitive damages, CMS's motion to dismiss this claim is denied.


### III. Conclusion

For the reasons set forth above, the motions to dismiss of Defendants NJDOC and CMS are granted in part and denied in part.  Finally, as the named individual defendants have all been dismissed from the case, Plaintiff is given thirty days from the date of this Order to identify the parties named as John Does 1-10 and Corporations x-z, or, in the alternative show cause as to why these unnamed parties should not be dismissed from the case.

Therefore,

IT IS on this 31st day of March, 2008 hereby

**ORDERED** that NJDOC's motion to dismiss Count VI is **GRANTED;**

**IT IS FURTHER ORDERED** that with respect to NJDOC's Counts VII, XI, and X , these counts are dismissed without prejudice with the right to re-file consistent with this Order; and

**IT IS FURTHER ORDERED** that CMS's motion to dismiss Counts III, IV, VI, VIII, IX, and X is **DENIED**; and

**IT IS FURTHER ORDERED** that NJDOC's motion to dismiss Counts II and III

is **GRANTED** pursuant to FED.R.CIV.P. 12(b)(1); and

      **IT IS FURTHER ORDERED** that NJDOC's motion to dismiss Count VIII is

**DENIED**.

Dated March 31, 2008

                          /s/ Joseph H. Rodriguez
                          JOSEPH H. RODRIGUEZ,
                          United States District Judge